# 24-13197-C

# United States Court of Appeals
### *for the*
# Eleventh Circuit

———◆———

YVONNE M. WEST,
individually and as administrator of the estate of Jamon West,

*Plaintiff-Appellant,*

— v. —

DEKALB COUNTY, GEORGIA,
CAPTAIN PHILLIP DITMORE,
SENIOR FIREFIGHTER DAVID KELLY,
SENIOR FIREFIGHTER JASON WINKLER,
SENIOR FIREFIGHTER KEVIN FLEMING, *et al.*,

*Defendants-Appellees.*

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Case No: 1:23-CV-01907-LMM

# INITIAL BRIEF OF APPELLANT

Leighton Moore
Georgia Bar No. 520701
1819 Peachtree Street, NE, Suite 403
Atlanta, Georgia 30309
(404) 285-5724 (Telephone)
leighton@moorefirmpc.com

*Counsel for Plaintiff/Appellant*

CP COUNSEL PRESS   (800) 4-APPEAL • [131022]

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Listed below are the trial judge and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case:

Bozeman, Robert O. (Attorney)

Britt, Russell A. (Attorney)

Burton, Joshua (Appellee)

Davis, Mawuli Mel (Attorney)

The Davis Bozeman Law Firm, PC

DeKalb County, Georgia (Appellee)

Ditmore, Phillip (Appellee)

Fite, Elizabeth L. (Attorney)

Fleming, Kevin (Appellee)

May, Hon. Leigh Martin  (USDC Judge)

Jones, C. (Appellee)

Kelly, David (Appellee)

Lakatos, Jonah (Appellee)

Lattimore, Timothy (Appellee)

Moore, Leighton (Attorney)

The Moore Law Firm, PC

Paxton, Deion (Appellee)

Payne, Tiffany (Appellee)

Spence, Harold W. (Attorney)

Van Wie, Melissa (Appellee)

Ware, R. David (Attorney)

West, Yvonne M. (Appellant)

Wiggins Law Group, LLC

Wiggins, Cary S. (Attorney)

Williams, M. (Appellee)

Williams, Brandon W. (Appellee)

Winkler, Jason (Appellee)

No publicly held corporation owns 10% or more of any party's stock.

This 21st day of February, 2025.

Respectfully submitted,

THE MOORE LAW FIRM, PC
*/s/ Leighton Moore*
Leighton Moore
Georgia Bar No. 520701
1819 Peachtree Street, NE, Suite 403
Atlanta, GA 30309
(404) 285-5724 (Telephone)
leighton@moorefirmpc.com

# STATEMENT REGARDING ORAL ARGUMENT

Plaintiff requests oral argument. This appeal presents significant issues regarding the application of Title II of the Americans with Disabilities Act (ADA) to the activities of a public entity in emergency medical and police services, raising questions regarding the application of this Court's precedential decisions in *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072 (11th Cir. 2007); *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334 (11th Cir. 2012); and *Ingram v. Kubik*, 30 F.4th 1241 (11th Cir. 2022). The appeal also raises important questions regarding the proper analysis of qualified immunity under 42 U.S.C. Section 1983. Among other things, the lower Court did not properly apply the Supreme Court's *per curiam* opinion in *Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 210 L.Ed.2d 609 (2021), which instructs that information other than case law, including departmental instructions and "well-known police guidance," can provide factually specific notice to officers regarding the circumstances under which a particular use of force is unreasonable.

Plaintiff respectfully suggests that the importance of the legal issues and the gravity of the subject matter make the case appropriate for oral argument.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
    DISCLOSURE STATEMENT ..................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF AUTHORITIES ...............................................................................iv

STATEMENT OF JURISDICTION......................................................................1

STATEMENT OF THE ISSUES...........................................................................1

STATEMENT OF THE CASE...............................................................................2

    I.    Statement of Proceedings Below......................................................3

        A.    Complaint and Motion to Dismiss ................................3

        B.    The First Dismissal Order .............................................4

        C.    The Second Dismissal Order .........................................5

    II.    Statement of Facts ............................................................................5

        A.    Applicable Legal Standard for Fact Issues ..................5

        B.    Factual Allegations ........................................................6

    III.    Standard of Review ........................................................................10

SUMMARY OF THE ARGUMENT ...................................................................11

ARGUMENT AND CITATION OF AUTHORITY ............................................12

    I.    The District Court erred in dismissing Plaintiff's ADA claim
        because Plaintiff plausibly alleged that DeKalb County was
        deliberately indifferent to the need for reasonable
        modifications to policies and procedures ...........................................12

        A.    DeKalb's policymakers had actual knowledge of the
            risk ...............................................................................13

        B.    The District Court erred in holding that DeKalb County
            provided the requested modifications .......................16

C.     The District Court erred in holding that the requested modifications were unreasonable as a matter of law ................17

II.     The District Court erred in discrediting Plaintiff's allegation that Capt. Ditmore had "substantial supervisory authority" to provide reasonable accommodations for Mr. West's disability at the scene .........................................................................20

III.    The District Court erred in finding that the individual defendants were entitled to qualified immunity as a matter of law ......................................................................................24

A.     Plaintiff states a claim for excessive force................24

B.     Plaintiff states a claim for deliberate indifference to medical needs ..........................................................31

IV.    The District Court erred in dismissing Plaintiff's claim against DeKalb County for failure to train...........................34

CONCLUSION ...........................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Am. Coll. of Emergency Physicians v. Blue Cross & Blue Shield of Ga.*,
833 F. App'x 235 (11th Cir. 2020) .................................................6

*Anderson v. Creighton*,
483 U.S. 635, 107 S. Ct. 3034 (1987) ..........................................30

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955,
167 L. Ed. 2d 929 (2007).................................................5, 13, 22

*Bircoll v. Miami-Dade Cnty.*,
480 F.3d 1072 (11th Cir. 2007) ..............................................18, 19

*Bradley v. Benton*,
10 F.4th 1232, 29 Fla. L. Weekly Fed. C 282
(11th Cir. 2021) ...............................................26, 27, 28, 29, 30

*Chaparro v. Carnival Corp.*,
693 F.3d 1333 (11th Cir. 2012) ..............................................6, 10

*Cottrell v. Caldwell*,
85 F.3d 1480 (11th Cir. 1996) .....................................................32

*Davidson v. Maraj*,
609 F. App'x 994 (11th Cir. 2015).................................................6

*Farmer v. Brennan*,
511 U.S. 825 (1994).......................................................................13

*Glasscox v. Argo*,
903 F.3d 1207 (11th Cir. 2018) ............................................. 30-31

*Ingram v. Kubik*,
30 F.4th 1241 (11th Cir. 2022).....................................................20

*J.S. v. Hous. Cty. Bd. of Educ.*,
877 F.3d 979 .............................................................................21, 22

iv

*Liese v. Indian River Cty. Hosp. Dist.*,
701 F.3d 334, 23 Fla. L. Weekly Fed. C 1668
(11th Cir. 2012) ...........................................................1, 11, 20, 22

*Lombardo* v. *City of St. Louis*,
141 S. Ct. 2239, 210 L. Ed. 2d 609 (2021)............................................27, 28

*Mercado v. City of Orlando*,
407 F.3d 1152 (11th Cir. 2005) ....................................................25

*Neitzke v. Williams*,
490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ............................5

*Nelson v. Tompkins*,
89 F.4th 1289 (11th Cir. 2024)....................................................23

*Pearson v. Callahan*,
555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) .............................31

*Pruitt v. City of Montgomery, Ala.*,
771 F.2d 1475 (11th Cir. 1985) ....................................................24

*Randall v. Scott*,
610 F.3d 701 (11th Cir. 2010) ....................................................6

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) ....................................................10

*Singleton v. Dep't of Corr.*,
277 F. App'x 921 (11th Cir. 2008)................................................5

*Skrtich v. Thornton*,
280 F.3d 1295 (11th Cir. 2002) ....................................................31

*Smith v. Mattox*,
127 F.3d 1416 (11th Cir. 1997) ....................................................31

*Tennessee v. Garner*,
471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985) ..................................29

*Valderrama v. Rousseau*,
780 F.3d 1108, 25 Fla. L. Weekly Fed. C 1004
(11th Cir. 2015) ....................................................32

*Wade v. Daniels*,
36 F.4th 1318, 29 Fla. L. Weekly Fed. C 1247
(11th Cir. 2022) ...........................................................32, 33

*Wade v. McDade*,
106 F.4th 1251 (11th Cir. 2024) ............................................................... 13, 23

**Statutes & Other Authorities:**

28 U.S.C. § 1291 ............................................................................................ 1

28 U.S.C. § 1331 ............................................................................................ 1

42 U.S.C. § 1983 .............................................................. 1, 2, 3, 11, 12, 24

42 U.S.C. § 12132 .......................................................................................... 1

42 U.S.C. § 12133 .......................................................................................... 1

## STATEMENT OF JURISDICTION

The District Court had federal-question jurisdiction of this action because it involves claims arising under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12132-12133 (the "ADA"), and 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291, because the appeal arises from the grant of all Defendants' Motions to Dismiss. The district court's final order and judgment were entered on September 16, 2024. (Doc. 83, 84). A timely Notice of Appeal (Doc. 85) was filed on September 27, 2024.

## STATEMENT OF THE ISSUES

1.      Whether the District Court erred in holding that Plaintiff failed to allege a violation of the Americans with Disabilities Act (ADA) by Defendant DeKalb County for failing to make reasonable modifications to its policies and procedures to address the well-known risk of death if a person experiencing excited delirium is subjected to prone restraint with hands cuffed behind the back?

2.      Whether the District Court erroneously performed the "fact-intensive inquiry" set out by this Court in *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 350, 23 Fla. L. Weekly Fed. C 1668 (11th Cir. 2012), when it discredited Plaintiff's factually plausible allegation that Captain Ditmore, DeKalb County's

commanding officer at the scene, had "substantial supervisory authority" to provide disability accommodations for Jamon West under the ADA?

3.     Whether the individual Defendants who caused the death of Jamon West were entitled to qualified immunity from Plaintiff's Section 1983 claims on the pleadings, where Plaintiff alleged: (A) that these Defendants continued to hold Mr. West in a prone position, with his hands cuffed behind his back, after he was subdued and there was no longer a need for any force, and (B) that departmental policies and well-known law-enforcement guidance advised these Defendants that these restraint methods created a risk of death to persons with excited delirium?

5.     Whether the District Court erred in discrediting Plaintiff's factually plausible allegation that DeKalb County was deliberately indifferent to the need to train its fire rescue personnel and police officers regarding the well-known risk of death if a person experiencing excited delirium is subjected to prone restraint with hands cuffed behind the back?

## STATEMENT OF THE CASE

This action asserts claims under Title II of the ADA and Section 1983 against DeKalb County, Georgia, certain of its fire-rescue personnel (the "DCFR Defendants"), and certain of its police officers (the "DKPD Defendants"), arising from the homicide of Jamon West by the DCFR and DKPD Defendants.

The District Court erroneously granted Defendants' Motions to Dismiss in two written Orders. (Doc. 66, 83.) Plaintiff appeals from those Orders.

## I.      Statement of Proceedings Below

### A.      Complaint and Motion to Dismiss

This action is brought by Yvonne West, as mother and Administrator of the Estate of Jamon West. (Doc. 1.) The action alleges claims under the ADA and Section 1983 against DeKalb County, Georgia, and members of the County's Fire Department and Police Department. (*Id.*)

Plaintiff filed her Complaint in the United States District Court for the Northern District of Georgia on April 26, 2023. (Doc. 1.) On June 26, 2023, Defendants filed two Motions to Dismiss: one on behalf of Defendants DeKalb County, Jones, and Paxton (Doc. 21), and one on behalf of Defendants Ditmore and Payne (Doc. 23).

In response to the first round of Motions to Dismiss, Plaintiff filed an Amended Complaint on July 17, 2023. (Doc. 28.) That filing mooted Defendants' then-pending Motions to Dismiss, as acknowledged in the District Court's Order dated July 18, 2023. (Doc. 29.)

During the above-described proceedings, Plaintiff completed service on Defendants DeKalb County (Doc. 6), Deion Paxton (*id.*), C. Jones (Doc. 31); Timothy Lattimore (Doc. 32); Melissa Van Wie (Doc. 33); Tiffany Payne (Doc.

34); Phillip Ditmore (Doc. 35); David Kelly (Doc. 36); Jason Winkler (Doc. 37); and M. Williams (Doc. 44). Plaintiff's investigator was unable to locate Defendants Kevin Fleming and Joshua Burton for service.

On July 31, 2023, Defendants filed a second round of Motions to Dismiss: one on behalf of Defendants DeKalb County, C. Jones, Timothy Lattimore, Deion Paxton, and M. Williams (Doc. 41); and one on behalf of the DCFR Defendants (Doc. 43). The DCFR Defendants' Motion to Dismiss addresses Counts IV (Excessive Force), V (Deliberate Indifference to Medical Needs), VI (Failure to Intervene), and VII (Attorneys' Fees and Expenses of Litigation) of the Amended Complaint.

### B.    The First Dismissal Order

In an Order dated February 2, 2024, the District Court purported to grant Defendants' Motion to Dismiss and to dismiss the action in its entirety. (Doc. 66, the "First Dismissal Order.") The Clerk of the District Court entered judgment that same day. (Doc. 67.) Plaintiff filed a timely Notice of Appeal. (Doc. 69.)

As it turned out, however, Defendant Fleming had been served about an hour before the judgment of dismissal was entered. About three weeks after the dismissal, Fleming filed a Motion to Dismiss "out of an abundance of caution." (Doc. 68.) On May 7, 2024, this Court dismissed the first appeal for lack of appellate jurisdiction. (Doc. 74.)

### C. The Second Dismissal Order

Upon remand from the first appeal, Plaintiff responded to Fleming's Motion to Dismiss and, in the same filing, asked the District Court to reconsider its prior dismissal. (Doc. 81.) The District Court granted Fleming's motion and entered a final dismissal of all Defendants on September 16, 2024. (Doc. 83, the "Second Dismissal Order.")

Plaintiff timely filed a second Notice of Appeal on September 27, 2024. (Doc. 85.)

## II. Statement of Facts

### A. Applicable Legal Standard for Fact Issues

It is axiomatic that a court is not authorized to find facts on a motion to dismiss for failure to state a claim. The Supreme Court has long instructed that "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929, 940 (2007)) (quoting *Neitzke* v. *Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)); *see also Singleton v. Dep't of Corr.*, 277 F. App'x 921, 922 (11th Cir. 2008) (district court erred in "deciding disputed issues of fact and making credibility determinations" within the Rule 12(b)(6) framework).

Instead, the Court must accept the complaint's allegations as true and construe them in the light most favorable to the plaintiff. *Am. Coll. of Emergency Physicians v. Blue Cross & Blue Shield of Ga.*, 833 F. App'x 235, 238 (11th Cir. 2020); *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (per curiam). All reasonable inferences from the facts must be drawn in the Plaintiff's favor. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). And an unfavorable fact may not be inferred unless the inference is "compelled by the allegations of the complaint." *Davidson v. Maraj*, 609 F. App'x 994, 999 (11th Cir. 2015).

When this legal standard is applied to the allegations of the Amended Complaint, the facts are as follows.

### B.    Factual Allegations

The lawsuit concerns an incident that occurred at Plaintiff's home in DeKalb County, Georgia. Doc. 28, ¶ 18. On August 16, 2019, Plaintiff's adult son, Jamon West, had an episode of what is known as "excited delirium" due to a seizure disorder. *Id.*, ¶ 19. He was not under the influence of any illegal drugs and was not suspected of any crime. *Id.*, ¶¶ 23, 126. His episode was the result of a medical condition, for which he took prescription medications. *Id.*, ¶¶ 87-88.

The symptoms of excited delirium include extreme agitation, hyperactivity, hyperthermia, confusion, and disregard of pain. *Id.*, ¶ 20. Because neither Mr. West nor his mother could control his symptoms, Ms. West called DeKalb County 9-1-1

and reported that her son was having a seizure and that she could not control him. *Id.*, ¶¶ 21-22. She asked for help. *Id.*, ¶ 22.

It is well known in the law-enforcement and medical communities that some methods of physical restraint create a heightened risk of asphyxia and cardiac arrhythmia in a patient with excited delirium. *Id.*, ¶ 25. This is because being restrained face-down on the ground, especially with hands cuffed behind the back, reduces a patient's ability to breathe. Published guidance from the United States Department of Justice has advised law-enforcement agencies since 1995 that this life-threatening risk is heightened when a person engages in physical struggle and then is restrained in a prone position with hands cuffed behind the back. *Id.*, ¶ 26, 66, 106. To reduce the risk of death in custody, other agencies modify policies and procedures by forbidding prone restraint and behind-the-back cuffing of persons with excited delirium, and by requiring that such persons be moved into a seated or side-lying position after they are restrained. *Id.*, ¶ 67, 70, 74.

Policymakers for both DCFR and DKPD had actual knowledge of the risk of death in custody if policies and procedures were not modified to accommodate persons suffering from excited delirium. *Id.*, ¶ 62. Demonstrating that knowledge, DCFR policy expressly prohibited prone restraint of persons with excited delirium, and allowed only soft medical restraints to be used on such patients rather than handcuffs. *Id.*, ¶ 68, 71. But DCFR did not train its firefighters on the risk of death

from improper restraint. *Id.*, p. 108. And after the events at issue here, DeKalb County found that all of its officers complied with applicable County policies and procedures. *Id.*, ¶79. This raises the inference that, despite the language of DCFR's written policy manual, its firefighters actually were permitted to use the restraint methods that the Defendants used here. Otherwise, the County would have found a violation of policy, which it did not.

DKPD policy mentions excited delirium only within the section on "Electronic Control Devices – Tasers," and does not address modified restraint procedures for adults with excited delirium. *Id.*, ¶ 65. DKPD officers also were not trained that the use of cuffs and prone restraint on a person with excited delirium could be deadly. *Id.*, p. 108. And none of DeKalb's policies required officers to place a person with excited delirium in a seated or side-lying position after being cuffed, to permit proper breathing and oxygen to the heart. *Id.*, ¶ 73.

The Amended Complaint alleges that all of the DCFR Defendants had actual knowledge that Mr. West was suffering from excited delirium, but disregarded the need to modify their restraint methods. DCFR officers Winkler and Lakatos were the first to arrive at the scene. *Id.*, ¶¶ 24. They observed the telltale symptoms of excited delirium, but they made the initial decision to restrain Mr. West in a prone position, face down on the ground. *Id.*, ¶¶ 24, 28. DCFR Defendants Ditmore, Kelly, Van Wie, and Fleming arrived and assisted in restraining Mr. West in a

prone position, with four or five firefighters applying force to all four extremities and to his back. *Id.*, ¶¶ 29-30.

Ms. West asked the officers to stop restraining him in this way because he could not breathe, but they ignored her. *Id.*, ¶¶ 31-33. She told all of the officers that Mr. West's behavior was the result of a medical condition for which he took prescription medications. *Id.*, ¶ 87. All of the officers could see that Mr. West exhibited the classic symptoms of excited delirium, including extreme agitation, hyperactivity, hyperthermia, confusion, and disregard of pain. *Id.*, ¶¶ 20, 90-91.

DCFR Defendants Ditmore and Payne then gave Mr. West an intramuscular injection of the maximum permitted dose of two sedative medications, Haldol and Versed. *Id.*, ¶¶ 34-35. Both of these medications are central nervous system depressants that carry the known risk of reducing a patient's ability to breathe, and Defendants Ditmore and Payne were aware of that side effect. *Id.*, ¶¶ 37-38, 92-93, 134. Yet, after administering these medications, the DCFR Defendants kept Mr. West in a prone position. *Id.*, ¶¶ 76, 134-137. In fact, when DeKalb County police officers arrived on the scene, Defendant Ditmore directed them to place Mr. West in handcuffs and assisted them in cuffing his hands behind his back. *Id.*, ¶¶ 39-42.

Neither Captain Ditmore nor Defendant Payne instructed the other officers to do anything to mitigate the risk of cardiorespiratory arrest. *Id.*, ¶¶ 136-37. To the contrary, Captain Ditmore left Mr. West restrained in a prone position, face down

on the ground with hands cuffed behind his back, while Ditmore walked off and made a radio call. *Id.*, ¶¶ 43-45. The officers continued to restrain Mr. West in a prone position until after the intramuscular injections had taken effect and Captain Ditmore had returned from making his call. *Id.*, ¶¶ 50-51.

Ditmore then finally ordered the handcuffs replaced with soft restraints, and the officers began transporting Mr. West across the yard. *Id.*, ¶¶ 52-53. Mr. West's respiratory rate dropped and he went into cardiac arrest. *Id.*, ¶ 53. After spending several days in a coma, Mr. West died on August 25, 2019. *Id.*, ¶ 54. The DeKalb County Medical Examiner determined that Mr. West died of "[d]elayed complications of cardiorespiratory arrest due [to] probable excited delirium and physical restraint," and that the manner of death was "homicide." *Id.*, ¶¶ 55-56.

## III.   Standard of Review

This Court reviews *de novo* the district court's grant of a motion to dismiss for failure to state a claim, accepting Plaintiff's allegations as true and construing them in the light most favorable to Plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012); *Chaparro*, 693 F.3d 1333, 1335. No deference is owed to the lower court. *Id.*

# SUMMARY OF THE ARGUMENT

Plaintiff's allegations in the Amended Complaint state valid and plausible claims for relief under Title II of the ADA and Section 1983. In holding otherwise, the lower court erred in several respects.

**First,** contrary to the ruling below, Plaintiff plausibly alleged that Defendant DeKalb County deliberately failed make reasonable modifications to policies and procedures to address the risk of death if a person experiencing excited delirium is subjected to prone restraint with hands cuffed behind the back. Plaintiff plausibly alleged that this risk was actually known to DeKalb County policymakers, both because they actually (but inadequately) addressed it in the DCFR policy manual and because well-known law-enforcement guidance has warned of it since at least 1995. Plaintiff's allegation that the modifications at issue are reasonable also has factual plausibility for the same reasons.

**Second,** the District Court erroneously performed the "fact-intensive inquiry" set out by this Court in *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 350, 23 Fla. L. Weekly Fed. C 1668 (11th Cir. 2012), when it discredited Plaintiff's factually plausible allegation that Captain Ditmore, DeKalb County's commanding officer at the scene, had "substantial supervisory authority" to provide disability accommodations for Jamon West under the ADA. Captain Ditmore's authority at the scene was sufficient to provide the accommodations and

11

was not subject to any meaningful review at a higher level because, for practical purposes, the decision would be final by the time any such review was conducted.

**Third,** the District Court erred in holding that individual Defendants who caused the death of Jamon West were entitled to qualified immunity from Plaintiff's Section 1983 claims on the pleadings. Plaintiff alleged: (A) that these Defendants continued to hold Mr. West in a prone position, with his hands cuffed behind his back, after he was subdued and there was no longer a need for any force, and (B) that departmental policies and well-known law-enforcement guidance advised these Defendants that these restraint methods created a risk of death to persons with excited delirium.

**Fourth,** the District Court erred in discrediting Plaintiff's factually plausible allegation that DeKalb County was deliberately indifferent to the need to train its fire rescue personnel and police officers regarding the well-known risk of death if a person experiencing excited delirium is subjected to the restraint methods at issue.

## ARGUMENT AND CITATION OF AUTHORITY

**I. The District Court erred in dismissing Plaintiff's ADA claim because Plaintiff plausibly alleged that DeKalb County was deliberately indifferent to the need for reasonable modifications to policies and procedures.**

In the First Dismissal Order, the District Court wrongly held that Plaintiff failed to allege DeKalb's deliberate indifference to the need for reasonable modifications to policies and procedures. The Court reached this erroneous holding

by misconstruing the allegations of the Amended Complaint and drawing factual inferences in favor of DeKalb, rather than in favor of Plaintiff as required by the Federal Rules of Civil Procedure.

To demonstrate deliberate indifference at this stage, Plaintiff must plausibly allege that Defendants had subjective knowledge that their conduct gave rise to a substantial risk of serious harm, and that they failed to act reasonably in response to that knowledge. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024). Plaintiff's allegations readily surpass this standard.

### A. DeKalb's policymakers had actual knowledge of the risk.

The Amended Complaint expressly alleges that policymakers for DeKalb County, including the Chiefs of both relevant departments, "had actual knowledge at all relevant times that excited delirium is associated with an increased risk of death in custody, and that ordinary restraint procedures must be modified when a subject has excited delirium in order to avoid creating an unreasonable risk of death." Doc. 28, ¶ 62. Numerous concrete factual allegations render this allegation "plausible on its face" within the meaning of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

First, the policy manuals for both DCFR and DKPD expressly mention excited delirium, providing direct evidence that DeKalb's policymakers actually

knew that this condition existed and that it called for special treatment. Although the facts of this case demonstrate that it is not applied as written, the language of DCFR's policy manual at least purports to prohibit prone restraint of persons with excited delirium, and to allow only soft medical restraints rather than handcuffs. *Id.*, ¶ 68, 71. DKPD policy mentions excited delirium within the section on "Electronic Control Devices – Tasers." *Id.*, ¶ 65.

Second, Plaintiff alleges that it is well known in the law-enforcement and medical communities that some methods of physical restraint create a heightened risk of asphyxia and cardiac arrhythmia in a patient with excited delirium. Doc. 28, ¶ 25. Guidance published by the United States Department of Justice has advised law-enforcement agencies since 1995 that this life-threatening risk is heightened when a person engages in physical struggle and then is restrained in a prone position with hands cuffed behind the back. *Id.*, ¶ 26, 66. The fact that this federal guidance had existed for **nearly a quarter of a century** at the time of the incident-in-suit at least raises a fair inference that DeKalb's policymakers, particularly at DKPD, were actually aware of it.

Plaintiff also alleges that the National Association of EMS Physicians stated, in a 2017 policy statement, that prone restraint "should be expressly prohibited" by EMS agency protocols for patients with excited delirium. Doc. 28, ¶ 27. It is a fair inference that officials whose job it is to formulate EMS policies and procedures

for an agency such as DCFR would consult — or at least be aware of — relevant guidance by a national medical association for emergency medical services. And whether or not DeKalb's policymakers knew of this specific medical guidance, the fact that it existed raises a reasonable inference that the increased risk of death from prone restraint of a person with excited delirium was mainstream knowledge in the EMS field. Confirming that inference, the Medical Examiner for DeKalb County found that Mr. West died of "[d]elayed complications of cardiorespiratory arrest due [to] probable excited delirium and physical restraint." Doc. 28, ¶¶ 55-56. If DeKalb County's Medical Examiner knew that improper physical restraint of persons with excited delirium could cause death, it is at least plausible that DeKalb County's EMS personnel had the same knowledge.

Finally, Plaintiff alleges that many governmental agencies around the country have enacted policies and procedures directing their officers how to address the risk of death in cases of excited delirium, including by prohibiting prone restraint and behind-the-back handcuffing and by requiring the subject to be placed in a seated or side-lying position. *Id.*, ¶¶ 61, 67, 70. The allegation that policymakers at similar agencies around the country were aware of this risk and took it seriously enough to change their policies makes it plausible to infer that DeKalb County's policymakers probably knew about it too.

**B.     The District Court erred in holding that DeKalb County provided the requested modifications.**

The District Court confusedly held that DeKalb County actually **provided** the necessary modification to its policies and procedures, because DCFR's policy manual states that persons with excited delirium "should never be oriented in a prone position." Doc. 66, p. 25; Doc. 28, ¶ 68. According to the District Court, it was only DCFR employees who oriented Mr. West in a prone position, so the lack of any DKPD policy prohibiting such restraint made no difference. Doc. 66, p. 25.

That holding is contrary to Plaintiff's allegations. First, the District Court overlooked the allegations that DKPD officers, not just DCFR officers, cuffed Mr. West's hands behind his back, restrained him in a prone position, and failed to move him into a seated or side-lying position so as to reduce the risk of death. Doc. 28, ¶¶ 39-50. It is fair to infer that, had DKPD enacted a policy forbidding prone restraint and behind-the-back handcuffing of persons with excited delirium, then at least one of the DKPD officers at the scene would have thought to modify the way Mr. West was restrained so that he would not die. But none did so.

Second, while Plaintiff does allege that DCFR's written policy prohibited orienting a person with excited delirium in a prone position, that allegation cannot be taken out of context. Plaintiff also alleges that DeKalb's officers **did** orient Mr. West in a prone position, and that the County nevertheless found upon internal review that all of its officers **complied** with policy. *Id.*; *see also* Doc. 28, ¶¶ 76, 79.

The District Court mentions that internal-review finding with approval (Doc. 66, p. 25), but appears to overlook the fact that it conflicts with what the written policy states. If the County's finding that the officers did not violate policy is taken at face value, then it follows that County policy does **not** forbid restraining a person with excited delirium in a prone position with hands cuffed behind his back, because that is exactly the conduct that the County approved here. The fact that the written policy states otherwise may create a fact issue as to whether DeKalb made a modification of policies and procedures, but it does not dictate judgment in the County's favor on that issue, as the District Court erroneously held.

> **C.** **The District Court erred in holding that the requested modifications were unreasonable as a matter of law.**

Plaintiff's Amended Complaint alleges that there are several reasonable modifications that DeKalb County policymakers could have made to DKPD's and DCFR's policies so as to mitigate the heightened risk that restraint will be fatal to a person with excited delirium. These include:

- Prohibiting officers from restraining persons with excited delirium in a prone position, Doc. 28, ¶ 67;

- Prohibiting behind-the-back handcuffing of persons with excited delirium, *id.*, ¶ 70; and

- Requiring officers to move persons with excited delirium into a seated or side-lying position after being restrained, *id.*, ¶ 74.

The District Court held that these modifications were unreasonable as a matter of law. Doc. 66, p. 26. This was error. Plaintiff's allegation that these are reasonable modifications is factually plausible and must be credited at the pleading stage.

Plaintiff plausibly alleges that a prohibition on prone restraint of persons with excited delirium is reasonable. Indeed, DCFR's written policy at least pays lip service to such a prohibition by stating that a person with excited delirium should never be oriented in a prone position. DeKalb County cannot be heard to argue that a modification contained in its own policy manual is unreasonable as a matter of law. Plaintiff's allegations that this modification is recommended by the United States Department of Justice and the National Association of EMS Physicians also raise an inference that it is reasonable. Finally, Plaintiff also alleges that other agencies have actually adopted this modification.

These allegations distinguish this case from *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072 (11th Cir. 2007), where no such facts were alleged. The plaintiff in *Bircoll* was stopped on the roadside for DUI, and the modification he sought was to have the officer delay performing field-sobriety tests, and wait on the side of the road at 3:00 a.m., until a sign-language interpreter could arrive to accommodate the suspect's hearing impairment. 480 F.3d at 1076-79. This Court found that to be an unreasonable accommodation, in part because the delay would cause the suspect's blood-alcohol content to change. *Id.* at 1085-86. But as this Court held in *Bircoll*,

"[t]he reasonable-modification inquiry in Title II-ADA cases is a highly fact-specific inquiry," and "[w]hat is reasonable must be decided case-by-case based on numerous factors." *Id.* at 1085-86. There was no suggestion in *Bircoll* that the United States Department of Justice recommended waiting on the side of the road at 3:00 a.m. for a sign-language interpreter before testing a DUI suspect.

The same allegations that demonstrate the reasonableness of prohibiting prone restraint also apply to Plaintiff's other two requested modifications, the prohibition on behind-the-back handcuffing and the requirement to put the subject in a side-lying or seated position. The fact that other agencies have endorsed these modifications, either by recommending them or by adopting them, *see* Doc. 28, ¶¶ 26-27, 74, lends plausibility to Plaintiff's allegation that they are reasonable modifications of policies and procedures. At a minimum, they cannot be judged unreasonable as a matter of law at the pleading stage.

Plaintiff is not asking the Court to "restrict DeKalb County's policies" on the pleadings, as the District Court incorrectly assumed. The question of whether the modifications proposed in the Complaint are reasonable is one that should be decided on a full evidentiary record, with the benefit of expert testimony. It may turn out to be a jury question, depending on how the record develops in discovery. At any rate, Plaintiff's position is that neither party is entitled to judgment as a matter of law on this issue in the current posture of the case.

## II. The District Court erred in discrediting Plaintiff's allegation that Capt. Ditmore had "substantial supervisory authority" to provide reasonable accommodations for Mr. West's disability at the scene.

This Court held in *Ingram v. Kubik*, 30 F.4th 1241, 1257 (11th Cir. 2022), that a public entity cannot be vicariously liable under Title II of the ADA for the actions of an employee. An entity is liable, however, for the deliberate indifference of an "official" whom it vests with discretion to decide whether to provide an accommodation for a person's disability. *Liese*, 701 F.3d at 350. For this purpose,

> an official is someone who enjoys substantial supervisory authority within an organization's chain of command so that, when dealing with the complainant, the official had complete discretion at a 'key decision point' in the administrative process. The 'key decision point' language reflects the practical reality that, while some decisions are technically subject to review by a higher authority, such a review is not part of the entity's ordinary decision-making process.

*Id.* This Court specifically held that high-level policymaking officials need not be involved, because "[e]ntities regularly undertake a myriad of official actions that do not involve policymaking." *Liese*, 701 F.3d at 349-50.

Count II of the Amended Complaint alleges liability against DeKalb County for the deliberate indifference of Captain Ditmore to Mr. West's known need for accommodations at the scene of the incident. Pursuant to *Liese*, Plaintiff alleged that DeKalb's policies, including its chain-of-command policy, vested Captain Ditmore with substantial supervisory authority so that, when dealing with Mr. West at the scene, Ditmore had authority and discretion to decide whether to make

reasonable accommodations for Mr. West's excited delirium. Doc. 28, ¶¶ 84-85, 96, 101-02.

These allegations are not merely conclusory, but have plausible factual support. For example, Plaintiff alleges that Ditmore was the commanding officer at the scene, and that the other officers obeyed his commands during the incident. (*Id.*, ¶¶ 34-35, 40-41, 84-85, 100.) In addition, Plaintiff alleges that DeKalb County conducted an official review of Ditmore's decisions at the scene, and found that he acted within policy. (*Id.*, ¶¶ 79.) This implies that the decisions he made, including his decision to apply prone restraint with hands cuffed behind the back, were within the authority vested in him by DeKalb County.

This Court has held in other cases that persons with less authority than Captain Ditmore were "officials" for purposes of ADA liability. For example, in *J.S. v. Hous. Cty. Bd. of Educ.*, *supra*, this Court held that a special-education teacher and a regular classroom teacher were officials with complete discretion at a "key decision point" in regard to disability discrimination against a child with special needs by a special-education paraprofessional. Even though the teachers were not policymakers and could not fire or discipline the paraprofessional, the teachers "held some supervisory authority" over the relevant activities and had authority to take at least preliminary steps to ensure compliance with the ADA. *J.S.*, 877 F.3d 979, 989. Here, Plaintiff alleges that Ditmore, as commanding

officer, had supervisory authority over all of the other officers at the scene, and that his supervisory authority included the power to make decisions about the requested accommodations. His authority over his officers was, if anything, greater than that of the teachers over the paraprofessional in *J.S.*

The District Court disregarded Plaintiff's allegations and purported to find that Captain Ditmore lacked sufficient discretion and supervisory authority to "make any corrective measures on DeKalb County's behalf." (Doc. 66, p. 28.) But if he was the commanding officer at the scene (as Plaintiff alleged, Doc. 28, ¶ 34, 84-85), then it follows that he had authority to make the necessary modifications. Rather than ask the DKPD officers to cuff Mr. West, for instance, he could have asked them to use soft restraints, or he could have directed them to place the handcuffs in front rather than back. He could have told the officers not to put weight on Mr. West's back, or to roll him onto his side. All of these decisions are well within the authority of a commanding officer.

Plaintiff's allegations establish that Captain Ditmore, like the doctors in *Liese* and the teachers in *J.S.*, had "substantial supervisory authority" under the applicable chain of command, and that his decisions regarding accommodations at the scene were made at a "key decision point" in the exercise of official discretion vested in him by Defendant. In discrediting these allegations, the district court erred. *See Twombly*, 550 U.S. at 556 (holding that "Rule 12(b)(6) does not

countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.").

The District Court may also have been confused by the fact that DCFR's written policy contains a prohibition on prone restraint, which arguably would limit Capt. Ditmore's discretion. But as the Amended Complaint alleges (and the District Court accepted), DeKalb County ratified Ditmore's actions as within policy. This implies that he had discretion to act as he did. Moreover, the DCFR policy (even if DeKalb enforced it as written) did not limit Ditmore's discretion to take other steps, such as placing Mr. West in a seated or side-lying position after he was restrained.

The District Court also purported to find that Captain Ditmore acted without deliberate indifference as a matter of law. This was improper. Plaintiff alleges that Ditmore knew that prone restraint with hands cuffed behind the back created an unreasonable risk of death for Mr. West, but unnecessarily subjected Mr. West to that risk in spite of such knowledge. That is sufficient for a jury to find deliberate indifference. *See Wade v. McDade*, 106 F.4th 1251, 1260-61 (2024); *Nelson v. Tompkins*, 89 F.4th 1289, 1297-98 (11th Cir. 2024).

The mere fact that Ditmore later ordered the handcuffs replaced with soft restraints does not automatically absolve him, because he did so only after having caused Mr. West to be improperly restrained in the first place — apparently long

enough to cause cardiac arrest. And the fact that DeKalb County found Ditmore complied with policy cannot protect DeKalb from liability for his decisions. Nothing in the ADA permits a public entity to shield itself from liability by finding that a failure to provide accommodations is County policy. If that were the law, there would never be liability. In so finding, the District Court erred.

### III. The District Court erred in finding that the individual defendants were entitled to qualified immunity as a matter of law.

The District Court erroneously held that the individual Defendants who caused the death of Jamon West were entitled to qualified immunity from Plaintiff's Section 1983 claims. When the allegations of the Amended Complaint are considered in the light most favorable to Plaintiff, as the law requires, it is clear that they state a legally valid claim for relief.

### A. Plaintiff states a claim for excessive force.

Plaintiff's claim for excessive force is based on her allegations that the use of prone restraint in combination with behind-the-back handcuffing, under the circumstances, was excessive and constituted deadly force, in that the officers knew that it exposed Jamon West to a significant risk of death or serious bodily injury. Doc. 28, ¶¶ 116-17. *See Pruitt v. City of Montgomery, Ala.*, 771 F.2d 1475, 1479 n.10 (11th Cir. 1985) (defining deadly force as force that an officer "knows to create a substantial risk of causing death or serious bodily harm"). Plaintiff alleges that there was no need for these potentially deadly methods of restraint; that

other, safer means were feasible and would not have involved any significant risk to the officers or anyone else; and that Defendants continued to apply these potentially deadly methods of restraint after any possible justification for them had ceased. Doc. 28, ¶¶ 119-121, 124.

Plaintiff further alleges that Mr. West had a clearly established right to be free from deadly force because he was known to be unarmed; was not suspected of any crime; was not attempting to flee; and was capable of being restrained safely without the need to cuff him behind the back and hold him in a prone position. *Id.*, ¶ 126. "Because this situation was clearly not a deadly force situation, and because the officers utilized deadly force to subdue [Mr. West], they violated the clearly established principle that deadly force cannot be used in non-deadly situations." *Mercado v. City of Orlando*, 407 F.3d 1152, 1160 (11th Cir. 2005).

The District Court accepted Defendants' argument that they were entitled to qualified immunity as a matter of law because "Plaintiff does not cite cases indicating that the use of prone restraints is *per se* deadly." Doc. 66, p. 13. The Court stated:

> Although the use of handcuffs and the prone position violated DCFR policy and DOJ guidance, Plaintiff does not point to any clearly established law that would be sufficient to put the officers on notice that this conduct would amount to unconstitutional deadly force. Plaintiff's allegations that Defendants violated "widely accepted law enforcement practices" and well-known police guidance are not sufficient. . . . Without case law showing that the use of a prone restraint and handcuffs on someone with excited delirium

constitutes deadly force, Plaintiff has not proven that Defendants violated clearly established law.

*Id.*, p. 14. These holdings are incorrect and should be reconsidered because: (1) it is not Plaintiff's burden to show "that the use of prone restraints is *per se* deadly," but only that it was deadly as used in the circumstances of this case; and (2) the doctrine of qualified immunity only requires a plaintiff to point to prior case law to put officers on notice of the **law**, not to put them on notice of **facts**, such as the fact that prone restraint with hands cuffed behind the back creates a significant risk of death for a person with excited delirium.

This Court's decision in *Bradley v. Benton*, 10 F.4th 1232, 29 Fla. L. Weekly Fed. C 282 (11th Cir. 2021), proves both points. In *Bradley*, a DeKalb Police Department officer named Casey Benton used a Taser to apprehend a man named Troy Robinson who fled from a traffic stop. 10 F.4th at 1235-36. There were facts to support a finding that, at the time the Taser was deployed, Robinson was at the top of an eight-foot wall. *Id.* He fell from the wall, broke his neck, and died. *Id.* Like the Defendants here, Benton argued that he was entitled to qualified immunity. *Id.* But this Court disagreed, despite the fact that there was not a prior decision holding Taser use to constitute deadly force.

First, this Court had "little trouble in concluding" that "Officer Benton's use of force in this context—shooting a taser aimed at a person on top of an eight-foot wall who was unarmed and not suspected of committing any particular crime—was

excessive." 10 F.4th at 1240. This Court so held because "a reasonable jury could find that that Officer Benton applied deadly force, that is, force that an officer knows to create a substantial risk of causing death or serious bodily harm." 10 F.4th at 1241 (cleaned up). This Court explained:

> We have recognized that a taser is generally not a deadly weapon. But like many other weapons, a foot, or a fist, a taser may be used to apply deadly force. As relevant here, we join many other courts that have recognized that tasing a person who is at an elevated height may come with a substantial risk of serious bodily harm or death.

10 F.4th at 1241.

This excerpt from *Bradley* demonstrates a couple of important points. First, there was no consideration of whether the general mode of force used was "*per se* deadly," as the District Court purported to require here. To the contrary, this Court noted that "a taser is generally not a deadly weapon." *Id.* And second, this Court did not require prior case law to put Officer Benton on notice that his use of force was deadly. Instead, this Court looked to Benton's testimony that he was familiar with DeKalb County policy that a Taser "should not be used when the risk of falling would likely result in death, for example, on a roof or next to a swimming pool." *Id.* And this Court cited *Lombardo* v. *City of St. Louis*, 141 S. Ct. 2239, 210 L.Ed.2d 609 (2021), for the rule that "departmental instructions and other well-known police guidance" are relevant to whether an officer should know his conduct is unlawful in the circumstance. Of course, the "well-known police

guidance" in *Lombardo* is particularly relevant here, because it is guidance "recommending that officers get a subject off his stomach as soon as he is handcuffed" because of the risk of death. *Id.*, 141 S. Ct. at 2241.

Plaintiff's Amended Complaint specifically alleges such "well-known police guidance," including the same guidance cited by the Supreme Court in *Lombardo*. *See* Doc. 28, ¶ 26 ("In 1995, the United States Department of Justice stated in written guidance to law-enforcement agencies that 'the risk of positional asphyxia is compounded when an individual with predisposing factors becomes involved in a violent struggle with an officer or officers, particularly when physical restraint includes use of behind-the-back handcuffing combined with placing the subject in a stomach-down position.'"); *id.*, ¶ 66 ("It is well known that prone restraint of persons with excited delirium creates an increased risk of positional asphyxia and cardiac arrythmia, especially when the subject's hands are cuffed behind the back."). Plaintiff also alleges that DCFR had a written policy forbidding prone restraint in these circumstances because of the risk of death. *Id.*, ¶¶ 67-68.

Just like the DeKalb Police Department policies cited by this Court in *Bradley*, and the departmental instructions and law-enforcement guidance cited by the Supreme Court in *Lombardo*, the DCFR policy and other well-known guidance alleged here create a reasonable inference that Defendants knew that they were

subjecting Jamon West to an unreasonable risk of death. Contrary to the holding below, that risk is not a fact that Defendants needed a court decision to tell them.

The same point also holds true for the clearly-established-law prong of the qualified-immunity inquiry, because whether a given use of force qualifies as deadly in the circumstances is not a legal issue. Accordingly, the Eleventh Circuit also held in *Bradley* that clearly established law governed Officer Benton's use of the Taser, despite the absence of a prior similar Taser case.

The materially similar precedent that clearly established the law in *Bradley* was none other than *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985). In *Garner*, of course, the officer used a gun. (Tasers were not issued to law enforcement officers until the 1990s, years after *Garner* was decided.) But the Eleventh Circuit held that this was "a distinction without a difference," because, "taking the facts in the light most favorable to Robinson, Benton used deadly force when he shot Robinson off the eight-foot wall with a taser. That is, he used force that he knew would create a substantial risk of causing death or serious bodily harm." 10 F.4th at 1243.

What the *Garner* decision told Benton, according to the Eleventh Circuit, was "that an officer cannot use deadly force to stop an unarmed man who is not suspected of committing a violent crime from fleeing on foot." *Id.* But *Garner* did **not** tell him (and did not need to tell him) that using a Taser on a person at the top

of an eight-foot wall constituted deadly force. Benton's knowledge of that fact was established at summary judgment by the evidence of his training and departmental policies, not by reference to judicial decisions. 10 F.4th at 1241, 1243.

It follows that the District Court's Dismissal Order erred in holding that, "[w]ithout case law showing that the use of a prone restraint and handcuffs on someone with excited delirium constitutes deadly force, Plaintiff has not proven that Defendants violated clearly established law." Doc. 66, p. 14. Case law does not need to demonstrate that "the very action in question has previously been held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). Rather, all it requires is "that in the light of pre-existing law the unlawfulness must be apparent." *Id.* Case law is not needed to prove that the force used here was deadly. Plaintiff has alleged that fact, and has alleged that Defendants knew or should have known that fact. Instead, case law is needed to provide the framework for whether the use of deadly force in these circumstances was lawful.

Taking the facts in the light most favorable to Plaintiff — as the Court must do — Defendants' use of force clearly was not permitted. The Eleventh Circuit held long ago that "an officer's use of substantial force in subduing an arrestee once the arrestee has submitted to the officer and ceased any resistance or threatening behavior is excessive." *Glasscox v. Argo*, 903 F.3d 1207, 1219 (11th

Cir. 2018) (citing *Smith v. Mattox*, 127 F.3d 1416, 1420 (11th Cir. 1997)). Here, Plaintiff alleges that "[t]he Excessive Force Defendants unreasonably continued to apply deadly force to Jamon West after any possible need for such force no longer existed." (Doc. 28, ¶ 124.) Specifically, they chose to keep West restrained face down on the ground, with hands cuffed behind the back, after he was subdued, when it would not have posed a significant danger to anyone if they had modified his restraint for his safety. (*Id.*, ¶¶ 118-22.)

In those circumstances, **any** gratuitous force — especially force that carries a significant risk of death or serious injury — cannot be justified. *Skrtich v. Thornton*, 280 F.3d 1295, 1303-04 (11th Cir. 2002) (holding that "officials may not use gratuitous force against a prisoner who has been already subdued"), overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Plaintiff's allegations state a claim for excessive force.

**B.  Plaintiff states a claim for deliberate indifference to medical needs.**

The Amended Complaint also alleges that Defendants Ditmore and Payne knew that Mr. West was suffering from medical symptoms associated with an increased risk of cardiorespiratory arrest; that they knew they had administered sedative drugs to Mr. West which would increase that risk; and that they knew Mr. West had a medical need for on-scene preventive measures such as repositioning his body in order to facilitate breathing; but that they knowingly failed to take

those preventive measures, resulting in his death. These allegations state a claim for deliberate indifference to serious medical needs.

Defendants argued below that a claim for deliberate indifference to serious medical needs will lie only where the victim is already incarcerated when the medical need arises; but that suggestion is contrary to precedent. See *Wade v. Daniels*, 36 F.4th 1318, 1335, 29 Fla. L. Weekly Fed. C 1247 (11th Cir. 2022) ("The Fourteenth Amendment requires government officials to provide medical care to individuals who are injured during arrest."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (holding that, with regard to deliberate indifference to serious medical needs, "decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees"); *Valderrama v. Rousseau*, 780 F.3d 1108, 1120, 25 Fla. L. Weekly Fed. C 1004 (11th Cir. 2015) (holding that an arrestee could bring a claim for deliberate indifference to serious medical needs where two officers knew he had received a non-fatal gunshot wound at the scene of the arrest, but delayed calling an ambulance for three-and-a-half minutes).

The District Court erroneously held that Defendants Ditmore and Payne could not be liable because the case law did not provide a "bright-line rule" requiring them to take any steps to help ensure Mr. West could breathe. This holding errs for the same reasons explained above: whether a particular situation creates a significant risk of death is a fact issue, not a legal issue. It is the type of

thing that Ditmore and Payne should have known by reading their policy manuals or by getting adequate emergency medical training, not by reading case law. The role of case law is to tell them whether they can lawfully impose that risk of death on someone in specific legal circumstances, not to tell them what creates the risk from a medical point of view.

*Wade*'s reference to a "bright-line rule" is inapposite here. In *Wade*, the arrestee's injury had already been inflicted, and the question was how long the officers — not EMS personnel, but police officers — could reasonably wait before providing treatment. Here, in contrast, Plaintiff's allegation is that Ditmore and Payne administered a maximum dose of respiratory-depressant medications to Mr. West, knowing that his symptoms and history already increased his body's demand for oxygen, and that they then knowingly disregarded the patient's need for oxygen by failing to follow DCFR's written policy, which prohibits prone restraint. Doc. 28, ¶¶ 130-37. Unlike the post-injury treatment at issue in *Wade*, the actions needed to ensure proper restraint position could only be taken **during the restraint** of Mr. West. Thus, Payne and Ditmore were not faced with any uncertainty as to how long they could reasonably wait before taking action, and the "bright-line rule" analysis of *Wade* does not apply.

## IV. The District Court erred in dismissing Plaintiff's claim against DeKalb County for failure to train.

Finally, the District Court erroneously dismissed Plaintiff's claim against DeKalb County for failure to properly train its officers. The Court acknowledged that Plaintiff alleged "that DeKalb County policymakers had actual knowledge of the increased risk of death that prone restraints and behind-the-back handcuffing create for excited delirium patients, reflected in DCFR and DCPD policies regarding excited delirium." Doc. 66, p. 20, citing Doc. 28, ¶¶ 63, 107. Yet the Court purported to find as a matter of law that, even with this knowledge, the need for training was not sufficiently obvious.

In so holding, the District Court erroneously drew inferences against Plaintiff and discredited Plaintiff's factually plausible allegations. If DeKalb County saw fit to address the connection between excited delirium and prone restraint in its policies, and agencies across the country including the United States Department of Justice have done likewise, then a jury could find that DeKalb also understood (and disregarded) the need for training. Even if DeKalb had only properly trained its EMS personnel, Jamon West's life could have been saved. Plaintiff plausibly alleges that DeKalb knowingly disregarded the need for such training.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's

Order and final judgment in their entirety and remand for discovery.

Respectfully submitted, this 21st day of February, 2025.

*s/ Leighton Moore*
Leighton Moore
Georgia Bar No. 520701
THE MOORE FIRM, P.C.
1819 Peachtree Street NE
Suite 403
Atlanta, GA 30309
Phone: 404-285-5724
leighton@moorefirmpc.com

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this Brief was prepared using Microsoft Word for Mac 2021 and is set in Times New Roman 14 pt. font. According to the word-count tool provided with the software, the relevant body of the brief contains 8,217 words.

*s/  Leighton Moore*
Leighton Moore

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served opposing counsel with a copy of the foregoing Brief of Appellant, by filing same with the Court's CM-ECF Appellate system, which will cause a copy of the filed document to be delivered electronically to counsel for Appellees.

This 21st day of February, 2025.

*s/ Leighton Moore*
Leighton Moore