CASE NO. 24-13197

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

YVONNE M. WEST,
Plaintiff-Appellant,
v.
DEKALB COUNTY, GEORGIA, et al.,
Defendants-Appellees.

---

APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN
DISTRICT OF GEORGIA, ATLANTA DIVISION;
CASE NO. 1:23-CV-1907-LMM

---

## BRIEF OF APPELLEES DEKALB COUNTY, WILLIAMS, LATTIMORE, JONES, AND PAXTON

---

191 Peachtree St. NE, Ste. 2900,
Atlanta, GA  30303
Tel: 404-954-5000
dware@hallboothsmith.com
rbritt@hallboothsmith.com
pcunningham@hallboothsmith.com
bwalker@hallboothsmith.com

HALL BOOTH SMITH, P.C.
R. DAVID WARE
Georgia Bar No. 737756
RUSSELL A. BRITT
Georgia Bar No. 473664
PEARSON K. CUNNINGHAM
Georgia Bar No. 391024
M. BLAKE WALKER
Georgia Bar No. 993236

*Counsel for DeKalb County,
Georgia, Sgt. M. Williams,
Off. Timothy Lattimore, Off. C.
Jones, and Off. Deion Paxton*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Listed below, in alphabetical order, are all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1. Bozeman, Robert O. (Attorney)

2. Britt, Russell A. (Attorney)

3. Cunningham, Pearson K. (Attorney)

4. Davis, Mawuli Mel (Attorney)

5. The Davis Bozeman Law Firm, PC

6. DeKalb County, Georgia (Appellee)

7. Ditmore, Phillip (Appellee)

8. Fite, Elizabeth L. (Attorney)

9. Fleming, Kevin (Appellee)

10. Hall Booth Smith, P.C.

11. Jones, Curtis (Appellee)

12.    Kelly, David (Appellee)

13.    Kutak Rock LLP

14.    Lattimore, Timothy (Appellee)

15.    May, Hon. Leigh Martin (USDC Judge)

16.    Moore, Leighton (Attorney)

17.    The Moore Law Firm, PC

18.    Paxton, Deion (Appellee)

19.    Payne, Tiffany (Appellee)

20.    Spence, Harold W. (Attorney)

21.    Van Wie, Melissa (Appellee)

22.    Walker, M. Blake (Attorney)

23.    Ware, R. David (Attorney)

24.    West, Yvonne M. (Appellant)

25.    Wiggins Law Group, LLC

26.    Wiggins, Cary S. (Attorney)

27.    Williams, M. (Appellee)

28.    Winkler, Jason (Appellee)

No publicly held corporation owns 10% or more of any party's stock.

Respectfully submitted this 24th day of March, 2025.

**HALL BOOTH SMITH, P.C.**

*/s/ M. Blake Walker*
R. DAVID WARE
Georgia Bar No. 737756
RUSSELL A. BRITT
Georgia Bar No. 473664
PEARSON CUNNINGHAM
Georgia Bar No. 391024
M. BLAKE WALKER
Georgia Bar No. 993236

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303
Tel; 404-954-5000
Email:dware@hallboothsmith.com
Email:rbritt@hallboothsmith.com
Email:pcunningham@hallboothsmith.com
Email:bwalker@hallboothsmith.com

*Counsel for DeKalb County, Georgia, Sgt. M. Williams, Off. Timothy Lattimore, Off. C. Jones, and Off. Deion Paxton*

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would not benefit the Court. The issues on appeal are controlled by binding precedent, and the District Court dismissed the Plaintiff's claims based on a straightforward application of *Twombly/Iqbal*.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................. C-1

STATEMENT REGARDING ORAL ARGUMENT ..................................... i

TABLE OF CONTENTS ............................................................... ii

TABLE OF CITATIONS ............................................................... iv

STATEMENT REGARDING ADOPTION ............................................ viii

JURISDICTIONAL STATEMENT ................................................... ix

STATEMENT OF THE ISSUES ...................................................... 1

STATEMENT OF THE CASE ........................................................ 2

    I.   Course of proceedings and dispositions below. ........................... 2

    II.  Statement of the facts. .................................................... 5

    III. Standard of review. ....................................................... 7

SUMMARY OF THE ARGUMENT .................................................. 8

ARGUMENT AND CITATION OF AUTHORITY .................................. 11

    I.   The District Court properly dismissed West's ADA claim based on DeKalb County's policy. .......................................... 11

         A.   Title II of the ADA does not apply to exigent circumstances. ..................................................... 12

         B.   West did not plausibly allege deliberate indifference. ........ 16

         C.   West's proposed modifications to the DeKalb County policies are unreasonable. ............................................... 19

II.   The District Court properly dismissed West's ADA claim based on DeKalb County's failure to accommodate West's disability at the scene. ...................................................................... 21

    A.   Captain Ditmore was not an official whose actions could impute liability to DeKalb County. ..................................... 22

    B.   Ditmore did not have actual knowledge of  discrimination. 24

    C.   Ditmore was not deliberately indifferent to the alleged misconduct. .......................................................................... 25

III.  The District Court properly dismissed West's excessive force claim because each of the individual defendants, including Officer Lattimore, is entitled to qualified immunity. ................. 26

    A.   West did not plausibly allege an excessive force claim. ...... 27

    B.   Officer Lattimore's actions did not violate clearly established law. ................................................................... 30

IV.   The District Court properly dismissed West's failure to intervene claims. ........................................................................ 33

V.    The District Court properly dismissed West's *Monell* claim. ..... 34

CONCLUSION ........................................................................ 36

CERTIFICATE OF COMPLIANCE ........................................ 38

CERTIFICATE OF SERVICE .............................................. 39

# TABLE OF CITATIONS

## Cases

*Bircoll v. Miami-Dade County*, 480 F.3d 1072 (11th Cir. 2007) ............... 8, 12, 13, 19, 20

*Bradley v. Benton*, 10 F.4th 1232 (11th Cir. 2021) .................................... 29, 30, 31, 32

*Bussey-Morice v. Kennedy*, 657 F. App'x 909 (2016) ................................. 34

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) ................................. 10, 35, 36

*Cottrell v. Caldwell*, 85 F.3d 1480 (11th Cir. 1996) ................................... 9, 28, 29, 32, 33

*Denham v. Corizon Health, Inc.*, 675 F. App'x 935 (2017) ......................... 36

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) ................................... 31

*Doe v. Sch. Bd. of Broward Cnty., Fla*, 604 F.3d 1248 (11th Cir. 2010) .... 21

*Estate of Osorio v. Miami-Dade County*, 717 Fed. App'x 957 (11th Cir. 2018) ................................................................. 12

*Floyd v. Waiters*, 171 F.3d 1264 (11th Cir. 1999) ..................................... 21

*Gains v. Wardynski*, 871 F.3d 1203 (11th Cir. 2017) ................................. 9, 31

*Garrett v. Athens-Clarke County;* 378 F.3d 1274 (11th Cir. 2004) ............
.................................................................................. 9, 29, 32, 33

*Gebser v. Lago Vista Independent Sch. Dist.*, 524 U.S. 274 (1998) ............
........................................................................................ 16, 18, 25

*Gold v. City of Miami*, 151 F.3d 1346 (11th Cir. 1998) ..............................
.............................................................................................................35

*Graham v. Conner*, 490 U.S. 386 (1989) ....................................................
.............................................................................................................27

*Haberle v. Troxell*, 885 F.3d 170 (3rd Cir. 2018) ......................................
.............................................................................................................13

*Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000) .....................................
.............................................................................................. 8, 13, 14, 15

*Helm v. Rainbow City, Ala.*, 989 F.3d 1265 (11th Cir. 2021) .....................
.......................................................................................................26, 30

*Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252 (11th Cir. 2004)
.............................................................................................................26

*Hopper v. Solvay Pharmaceuticals, Inc.*, 588 G.3d 1318 (11th Cir. 2009)
..............................................................................................................7

*Ingram v. Kubik*, 30 F.4th 1241 (11th Cir. 2022) .......................................
....................................................................................................12, 16, 18

*J.S. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979 (11th Cir. 2017) ............
.............................................................................................................24

*Jones v. City of Dothan Ala.*, 921 F.3d 1456 (11th Cir. 1997) ...................
.............................................................................................................31

*Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034 (11th Cir. 2004) .....................
.............................................................................................................35

*Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288 (11th Cir. 2019) ...................................................................................................34

*Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334 (2012) ................... ........................................................................................ 9, 22, 23, 24

*McDowell v. Brown*, 392 F.3d 1283 (11th Cir. 2004)................................. ...................................................................................................34

*Molett v. Georgia*, 469 F. App'x 766 (11th Cir. 2012) ............................... ...................................................................................................vii

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) ................................................. ...................................................................................................27

*Rosen v. Montgomery County*, 121 F.3d 154 (4th Cir. 1997) ..................... ............................................................................................ 8, 13, 14

*Sebastian v. Ortiz*, 918 F.3d 1301 (11th Cir. 2019) ................................... ...................................................................................................34

*Silberman v. Miami Dade Transit*, 927 F.3d 1123 (2019)........................... ........................................................................................ 9, 11, 17, 23, 24

*Tennessee v. Garner*, 471 U.S. 1 (1985)..................................................... ...............................................................................................27, 32

*Vielma v. Gruler*, 808 F. App'x 872 (2020)................................................ ...................................................................................................35

*Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (2015)...... ...................................................................................................16

*Welch v. City of Hartselle*, 423 F.Supp.3d 1277 (N.D. Ala. 2019) .............. ...................................................................................................13

**Statutes**

§ 1983................................................................................26, 34

42 U.S.C. § 12132 .................................................................8, 11

## STATEMENT REGARDING ADOPTION

Defendants DeKalb County, Williams, Lattimore, Jones, and Paxton hereby adopt the argument regarding the Court's jurisdiction to consider issues outside of the order and judgment specified in West's notice of appeal, as argued by Defendants Fleming, Ditmore, Kelly, Payne, Van Wie, and Winkler on pages 23 through 27 of their brief.

## JURISDICTIONAL STATEMENT

Pursuant to 28 U.S.C. § 1331, the District Court had federal question jurisdiction over Plaintiff-Appellant Yvonne M. West's claims brought under 42 U.S.C. § 1983. West's notice of appeal identifies only the District Court's Order granting Appellee-Defendant Kevin Fleming (Doc. 84), but nothing on the face of the notice of appeal identifies the District Court's orders dismissing the other defendants below (Docs. 66, 80). Doc. 85. Accordingly, this Court has appellate jurisdiction over only the District Court's Order granting Appellee-Defendant Kevin Fleming's motion to dismiss (Doc. 83) and the clerk's judgment dismissing Fleming (Doc. 84). The Court lacks jurisdiction to consider the District Court's orders dismissing the other defendants below. *See* Docs. 66 and 80; *see also Molett v. Georgia*, 469 F. App'x 766, 767 (11th Cir. 2012) ("because nothing on the face of the notice otherwise evidenced that he also intended to appeal the court's June 2010 order, we lack jurisdiction to consider [it].").

## STATEMENT OF THE ISSUES

1.      Whether the District Court erred in dismissing West's ADA claims against DeKalb County?

2.      Whether the District Court erred in dismissing West's Section 1983 claims against the individual officers?

3.      Whether the District Court erred in dismissing West's Monell claim against DeKalb County?

## STATEMENT OF THE CASE

Plaintiff Yvonne West alleged that DeKalb County and many of its police officers and firefighters violated her son's rights and caused his death by restraining him in a prone position with his hands cuffed behind his back. The defendants moved to dismiss each of West's claims, and the District Court granted those motions.

## I.    Course of proceedings and dispositions below.

**Parties and West's claims.** Yvonne West sued DeKalb County and various DeKalb County police officers and firefighters after her son, Jamon West,[1] died. Docs. 1; 28. The firefighter defendant-appellees include Philip Ditmore, David Kelly, Jason Winkler, Kevin Fleming, Tiffany Payne, and Melissa Van Wie. The police defendant-appellees include M. Williams; Timothy Lattimore, Deion Paxton, and Curtis Jones.

In count I and count II of her complaint, West lodged ADA failure to accommodate claims against DeKalb County. Doc. 28 ¶¶ 58-104. Similarly, count III was a *Monell* failure to train claim against DeKalb County for its failure to train its first responders on the risks associated

---

[1] To avoid confusion, Jamon is referred to by his first name.

with Jamon's disability. *Id.* ¶¶ 105-12. Count IV was a Fourth Amendment excessive force claim against individual first responders, one police officer and multiple firefighters. *Id.* ¶¶ 113-27. Count V was a deliberate indifference to medical needs claim against two firefighters, which is not at issue in this brief. *Id.* ¶¶ 128-39. And finally, Count VI was a failure to intervene claim against all the individual defendants. *Id.* ¶¶ 140-44.[2]

**The defendants' motions to dismiss.** Plaintiff Yvonne West filed her complaint on April 26, 2023. Doc. 1. The defendants responded with two motions to dismiss (one on behalf of DeKalb County and the then-served police defendants and one on behalf of the then-served firefighter defendants) on June 26, 2023. West amended her complaint on July 17, 2023. Docs. 21; 23; 28. The defendants, this time with more individual defendants served, responded with another round of motions to dismiss. Docs. 41; 43. One motion was filed by Defendants DeKalb County,

---

[2] The only claim brought against Appellees Williams, Paxton, and Jones was the failure to intervene claim. That claim was properly dismissed if West's excessive force claim was dismissed because "[a]n officer cannot be held liable for failing to stop or intervene when there is no constitutional violation being committed.". *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019).

3

Williams, Lattimore, Jones, and Paxton (Doc. 41), while another motion was filed by Defendants Ditmore, Kelly, Payne, Van Wie, and Winkler (Doc. 43). The District Court granted the defendants' motions to dismiss and dismissed each of West's claims. Doc. 66.

But a few days before it granted the defendants' motions to dismiss, the District Court extended the time to perfect service on the unserved defendants for 40 days, and that time had not expired when the District Court ruled. Doc. 63; 66. To further confuse matters, Defendant Fleming was served on the same day that the court granted the defendants' motions to dismiss. Fleming then filed his own motion to dismiss and adopted the arguments of the other firefighter defendants. Doc. 68. Before the District Court ruled on Fleming's motion, West appealed the court's order and judgment that had previously been entered. Doc. 69. Because there were pending claims left, this Court dismissed West's appeal. Doc. 74.

Once the case was remanded, the District Court vacated its previous order that granted the defendants' motion to dismiss and amended that order to state that all unserved defendants (Lakatos, B. Williams, and Burton) were dismissed for lack of service. The court also

ordered briefing on Defendant Fleming's (still pending) motion to dismiss. Doc. 80. Once fully briefed, the District Court granted Fleming's motion, and all claims were finally dismissed. Doc. 83. West appealed. Doc. 85.

## II.    Statement of the facts.

On August 16, 2019, Jamon, who suffered from a "seizure disorder," experienced a behavioral crisis. Doc. 28 ¶¶ 18-19. West alleges that this episode is commonly known as "excited delirium." *Id.* ¶ 19. Excited delirium, according to West, "is not itself a medical diagnosis, but rather a phenomenon associated with certain types of substance abuse or psychiatric/neurological disorders." *Id.* ¶ 20.

Persons experiencing excited delirium "exhibit extreme agitation, hyperactivity, hyperthermia, confusion, and disregard of pain." *Id.* ¶ 20. Jamon could not control his symptoms, and West called 911 to report that her son "was having a seizure, that she could not control him, and that she needed help." *Id.* ¶¶ 21-22. Firefighters were the first to arrive, and they observed "that [Jamon] was highly agitated, hyperactive, confused, and not in control of his behavior." *Id.* ¶ 24. Because of Jamon's condition, the firefighters restrained him in a prone position until further

5

assistance arrived. *Id.* ¶¶ 28-29. Fire Captain Ditmore arrived and ordered that Jamon be given a sedative to control his agitated behavior. *Id.* ¶¶ 34-35.

Police officers then arrived at the scene to assist the firefighters. *Id.* ¶ 39. Captain Ditmore requested that the police officers, including Officer Lattimore, handcuff Jamon while the sedatives took effect, and Jamon remained in a prone position with his hands cuffed behind his back until the sedatives took effect. *Id.* ¶¶ 40-41, 50. Captain Ditmore made a status report over the radio to his unit. *Id.* ¶ 44. Following the call over the radio, Captain Ditmore observed that Jamon had calmed, so he ordered that the handcuffs be removed and be replaced with soft restraints. *Id.* ¶¶ 51-52.

As the first responders began to transport Jamon to the emergency vehicle, however, Jamon's respiratory rate dropped, and he entered cardiac arrest. *Id.* ¶ 53. Jamon was rushed to the hospital where he lingered in a coma for several days before passing away on August 25, 2019. *Id.* ¶ 54. West alleged that Jamon's cause of death was "delayed complications of cardiorespiratory arrest due to probable excited delirium and physical restraint." *Id.* ¶ 55. West contends that restraints like those

6

used on Jamon increase the risk of cardiac arrhythmia and asphyxia when the person restrained is experiencing excited delirium. *Id*. ¶ 25.

## III.  Standard of review.

The Court reviews de novo a district court's grant of a motion to dismiss for failure to state a claim upon which relief may be granted. *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009).

## SUMMARY OF THE ARGUMENT

**ADA**. First, Title II of the ADA is inapplicable to this situation. Taking custody of an individual like Jamon in this situation should not fall within the definition of a "program or activity" that first responders must accommodate under 42 U.S.C. § 12132. This Court should follow the Fifth Circuit and hold that Title II of the ADA is inapplicable in situations like this. *See Rosen v. Montgomery Cnty.*, 121 F.3d 154, 157 (4th Cir. 1997); *Hainze v. Richards*, 207 F.3d 795, 797 (5th Cir. 2000).

But even if the ADA could potentially apply, West has not plausibly alleged that DeKalb County had actual knowledge of discrimination against individuals experiencing excited delirium, and thus DeKalb County was not deliberately indifferent to that discrimination. Moreover, the proposed modifications to DeKalb County's policies are unreasonable because they limit first responders' ability to respond to exigent circumstances. *See Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1085 (11th Cir. 2007).

DeKalb County also cannot be liable for discrimination against Jamon merely because Captain Ditmore, an individual with supervisory authority, responded to the emergency call. Captain Ditmore, while

8

present at the scene, was not involved in any administrative process regarding Jamon's disability. *See Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 351 (2012); *Silberman v. Miami Dade Transit*, 927 F.3d 1123 (2019).

**Excessive force.** West's excessive force claim against the individual defendants was properly dismissed. First, cuffing Jamon's hands behind his back while he was in a prone position did not constitute excessive force. Jamon was agitated, hyperactive, and not in control of his behavior. Doc. 28 ¶ 24. This Court has held that restraining uncooperative arrestees in more egregious manners than that used here did not constitute excessive force. *Cottrell v. Caldwell*, 85 F.3d 1480 (11th Cir. 1996); *Garrett v. Athens-Clarke Cnty.* 378 F.3d 1274, 1278 (11th Cir. 2004). And even if using such force was excessive, West has not overcome qualified immunity by showing that any reasonable officer would know that the force used on Jamon was unconstitutional. *Gains v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017).

**Monell**. Finally, West has not plausibly alleged a failure to train *Monell* claim against DeKalb County. West has not shown, or attempted to show, a pattern of prior similar constitutional violations. Rather she

9

argues that it was so likely that DeKalb County would violate the constitution that the need to train on restraining individuals with excited delirium was obvious. But the Supreme Court has warned that such an argument can only succeed in a "narrow range" of cases. *Cty. of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989). And based on binding precedent, the issue here was far too specific to fall within that narrow range of cases.

## ARGUMENT AND CITATION OF AUTHORITY

I.    **The District Court properly dismissed West's ADA claim based on DeKalb County's policy.**

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II, a plaintiff must show

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of his disability.

*Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019). But in cases where the plaintiff seeks money damages, he must also prove that the defendant "engaged in intentional discrimination, which requires a showing of deliberate indifference." *Id*. A plaintiff may not rely on vicarious liability to prove an ADA claim. Rather, to show deliberate indifference and hold an entity liable for damages under the ADA, a plaintiff must show that an official with authority to address the

discrimination on the entity's behalf had actual knowledge of the discrimination within the entity's programs. *Ingram v. Kubik*, 30 F.4th 1241, 1257 (11th Cir. 2022).

### A. Title II of the ADA does not apply to exigent circumstances.

The District Court assumed without deciding that Title II of the ADA can apply to the facts of this case. Doc. 66 at 23. The Court should hold that Title II does not apply to first responders' encounters with disabled individuals that occur in exigent circumstances.[3]

The Eleventh Circuit has "never addressed whether police officers can violate Title II of the ADA." *Estate of Osorio v. Miami-Dade Cnty.*, 717 F. App'x 957, 957 (11th Cir. 2018). In *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1085 (11th Cir. 2007), the Eleventh Circuit assumed without deciding that a claim could arise, but then rejected the plaintiff's claim on the merits. *Id.* at 1085-89; *see also Ingram,* 20 F.4th at 1257 ("Turner argues that . . . Title II does not apply to police encounters. The latter argument *may* conflict with precedent . . . . But we need not address

---

[3] DeKalb County made this argument to the District Court (Doc. 41-1 at 21-23), and the District Court assumed without deciding that Title II could apply to this case. Doc. 66 at 23.

that argument because we conclude that vicarious liability is unavailable." (emphasis added, citing *Bircoll*, 480 F.3d at 1084-85)); *see also Welch v. City of Hartselle*, 423 F.Supp.3d 1277, 1285 (N.D. Ala. 2019).

The circuits are currently split on the issue. *Compare Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000), *with Haberle v. Troxell*, 885 F.3d 170, 178-79 (3rd Cir. 2018). And when the Supreme Court granted certiorari to address the issue, the Court ultimately dismissed the question presented as improvidently granted. *Cty. & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 610 (2015). This Court should side with the Fifth Circuits and hold that Title II of the ADA does not apply to emergency situations involving first responders.

Title II should not be read to reach first responders investigating, arresting, or performing community caretaker functions in exigent circumstances. This sort of activity is not something that a plaintiff "participates" in and from which there may be a "benefit." *See Sheehan*, 575 U.S. at 609 (noting argument). In *Rosen v. Montgomery Cnty.*, the Fourth Circuit held that an arrest is not a program or activity the is covered by Title II. 121 F.3d 154, 157 (4th Cir. 1997) ("Rosen clearly has

13

a disability, but calling a drunk driving arrest a 'program or activity' of the County, the 'essential eligibility requirements' of which (in this case) are weaving in traffic and being intoxicated, strikes us as a stretch of the statutory language and of the underlying legislative intent."). And while *Rosen*'s reach has been limited, the Court should nonetheless adopt the Fourth Circuit's reasoning that to the extent police are required, at some point, to accommodate a disability, that point is not before arrival at the police station. *Id*. at 158 ("The police do not have to get an interpreter before they can stop and shackle a fleeing bank robber, and they do not have to do so to stop a suspected drunk driver, conduct a field sobriety test, and make an arrest.").

In *Hainze v. Richards*, a plaintiff sued under the ADA after he was shot by police when he approached them with a knife. 207 F.3d 795, 797 (5th Cir. 2000). The plaintiff argued that he was entitled to recover under the ADA because the sheriff failed to establish policies or train its officers on interactions with the mentally ill. The Fifth Circuit disagreed and held that "Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's

securing the scene and ensuring that there is no threat to human life." *Id.* at 801. The court reasoned that law enforcement personnel must make split-second decisions in emergency situations and that adding the ADA into the decision-making process would put innocent lives in danger. *Id.* at 801. Accordingly, the Fifth Circuit reasoned that the ADA was not meant to abate discrimination at the expense of public safety. *Id.*

Here, West called 911 because she could not control Jamon, who was "highly agitated, hyperactive, confused, and not in control of his behavior." Doc. 28 ¶¶ 21-22, 24. In fact, Captain Ditmore determined it necessary to administer a chemical sedative to Jamon, an action that West does not contend constituted excessive force or discrimination. *Id.* ¶¶ 34-35. This Court should hold that the ADA does not require public entities to draft policies that limit when first responders can apply legitimate procedures in exigent circumstances. The Court should further hold that the ADA does not require first responders to accommodate disabilities during emergency circumstances. Only once the safety of innocents is satisfied should public entities be required to accommodate disabilities—not in quickly-changing exigent circumstances.

**B.    West did not plausibly allege deliberate indifference.**

West does not attempt to establish actual knowledge of discrimination by pointing to previous similar instances that could put DeKalb County on notice of discrimination. Appellant's Brief at 22-24. But to show that an entity has actual knowledge that its policies are inadequate, a plaintiff must allege previous instances of discrimination without subsequent changes. *Ingram,* 30 F.4th at 1259 (holding that the deliberate indifference standard in *Gebser v. Lago Vista Independent Sch. Dist.*, 524 U.S. 274 (1998) applies to ADA claims).[4]

West argues that DeKalb County had actual knowledge that its policies were discriminatory in other ways.

First, West argues that because DeKalb County's Fire Department policy forbids orienting patients with excited delirium in a prone position, DeKalb County policymakers knew about the risk associated with excited delirium. Appellant's Brief at 23 (citing Doc. 28 ¶ 68). The DeKalb Police

---

[4] In *Gebser*, the Supreme Court clarified that a plaintiff cannot show deliberate indifference through constructive knowledge—only actual notice would suffice. 524 U.S. at 285; *see also Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1328-29 (2015) (holding that previous constitutional violations must be shown to establish deliberate indifference in *Monell* context).

Department policies, West adds, mention excited delirium in a section about tasers. *Id*. (citing Doc. 28 ¶ 65). West thus contends that because DeKalb County policymakers were at least aware of the existence of excited delirium, they had actual knowledge that the policy should have been amended to avoid discrimination.

But deliberate indifference is an "exacting standard." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019). It requires proof that the defendant-entity knew that discrimination was likely based on the policies, not simply that a disability exists in the world and that it could require special treatment. Far from an exacting standard, under West's proposal, any disabled person that is injured could establish intentional discrimination just by showing that an entity's policy was not uniquely tailored to their disability, regardless of whether such injury had ever occurred before.

West next argues that the risks associated with excited delirium are "well known in the law-enforcement and medical communities." Appellant's Brief at 23. But again, this argument is that the DeKalb County policymakers *should have known* about a particular risk. The Supreme Court and Eleventh Circuit have explicitly held that deliberate

17

indifference cannot be established by constructive knowledge. *Gebser*, 524 U.S. at 285; *Ingram*, 30 F.4th at 1259. Even if West's argument here is that some DeKalb County policymaker had actual notice of the risks because it is common knowledge, such allegations still cannot prove actual notice *of discrimination*. Again, accepting West's argument would abrogate the exacting, deliberate indifference standard. A plaintiff would only need to show that a policy did not carve out special treatment for a well-known disability, not that discrimination actually exists within the entity.

Finally, West argues that other governmental agencies have enacted policies that forbid the use of prone restraints on individuals with excited delirium. But this argument, like West's others, only succeeds if the deliberate indifference / actual notice standard set out in *Gebser* and *Ingram* is reduced to something else. The fact that other agencies forbid prone restraints in this situation does not show that DeKalb County policymakers knew about discrimination within their organization.

In sum, West did not adequately plead that DeKalb County had actual knowledge of discrimination.

### C.  West's proposed modifications to the DeKalb County policies are unreasonable.

West argues that prohibiting prone restraints or behind-the-back hand cuffing in circumstances like this could be reasonable modifications. The District Court disagreed and declined to restrict police tactics in exigent circumstances via the ADA. Doc. 66 at 26 ("neither the Court nor the ADA is well-equipped to influence police policy to the extent that [West] requests"). The court added that "[l]imiting officers' ability to respond to a quickly evolving situation could hinder their decision making and risk public safety." *Id*.

In *Bircoll v. Miami-Dade Cnty.*, this Court rejected an ADA claim that sought to undermine police policies in exigent and quickly changing circumstances. 480 F.3d 1072, 1085-87 (2007). There, the plaintiff's proposed modification was changing police policy to allow road-side interpreters for deaf persons in DUI investigations and arrests. The Court reasoned that waiting for an interpreter was an unreasonable modification to police policy because of the exigent nature of DUI stops, the quick judgment needed by police, and the public safety concerns in criminal activity. *Id*. at 1086.

19

West argues that *Bircoll* is distinguishable because other agencies, including DeKalb County's fire department, have prohibited prone restraints on individuals with excited delirium. Appellant's Brief at 24-25. But the *Bircoll* opinion did not imply that it matters what other agencies have deemed appropriate. Rather, the Court made clear that it was the exigent circumstances of the DUI stop that made modifications unreasonable. *Id.* at 1086. Moreover, accepting West's argument would render *Bircoll's* holding meaningless; the presence of exigent circumstances would be irrelevant to determining whether a suggested modification is reasonable, so long as the plaintiff could point to some other agency that adopted such a modification.

Here, West called law enforcement to her home because she could not control Jamon. Doc. 28 ¶¶ 21-22. When first responders arrived, they administered to Jamon a chemical additive to control his behavior, which West describes as "highly agitated, hyperactive, [and] confused." *Id.* ¶ 24. If a DUI stop is an exigent circumstance for which ADA modifications are unreasonable, then this situation surely is. The Court should affirm.

## II.    The District Court properly dismissed West's ADA claim based on DeKalb County's failure to accommodate West's disability at the scene.

Again, to show deliberate indifference and hold an entity liable for damages under the ADA, a plaintiff must show that an official with authority to address the discrimination on the entity's behalf had actual knowledge of the discrimination occurring in the entity's programs. *Ingram*, 30 F.4th at 1257, 1259. To be an appropriate "official" the individual must be "high enough up the chain-of-command that his actions constitute an official decision . . . not to remedy the misconduct." *Doe v. Sch. Bd. of Broward Cnty., Fla*, 604 F.3d 1248, 1255 (11th Cir. 2010) (quoting *Floyd v. Waiters*, 171 F.3d 1264, 1264 (11th Cir. 1999)).

West argues that DeKalb County can be liable for violating Jamon's ADA rights because Captain Ditmore was at the scene. But West did not adequately allege that Captain Ditmore was vested with decision making authority that could bind DeKalb County. And in any case, West failed to adequately allege that Captain Ditmore was deliberately indifferent to known discrimination.

## A. Captain Ditmore was not an official whose actions could impute liability to DeKalb County.

First, Captain Ditmore's actions in an exigent circumstance cannot constitute intentional discrimination by DeKalb County. West argues that because Captain Ditmore was the highest-ranking firefighter on the scene and that other first responders obeyed his commands, his decisions regarding West's disability bind DeKalb County. Appellant's Brief at 29. But that means that whenever a first responder in a field-supervisory position makes a decision—even in an emergency—the entity employing that responder can be directly liable under the ADA. That sounds like vicarious liability.

In *Liese v. Indian River Cnty. Hosp. Dist.*, the Court explained that an entity may be liable under the ADA only if the plaintiff shows there was an official that knew about the discrimination and refused to correct it. 701 F.3d 334, 351 (2012). This "official" the Court held, must be someone "whose actions can fairly be said to represent the action of the organization." *Id*. at 350. Moreover, the official must be someone who has "complete discretion at a 'key decision point' in the administrative process." *Id*.

22

The Court subsequently emphasized in *Silberman v. Miami Dade Transit*, that the "key decision point" must take place in the administrative process, not merely when the allegedly discriminatory practice takes place. 927 F.3d at 1136. There, a plaintiff sued for damages under the ADA and argued that bus drivers in the county's transit agency had denied him service because of his disability. The plaintiff argued that the bus drivers were officials whose decisions could impose liability on the entire entity, and that the denial of service was the key decision point. But this Court explained that while bus drivers certainly had a role in the process, it was not during the "administrative process." *Id*. Moreover, the "key decision point" referenced in *Liese* did not encompass every employee in the position to deny service. Otherwise, any employee that ever denied a disabled individual services would bind the entire entity "thereby reducing the *Liese* standard to a variant of vicarious liability and making compensatory damages the rule rather than the exception." *Id*.

West's allegations that Captain Ditmore had authority at the scene are not sufficient to show that his decision could bind DeKalb County. West has not alleged that Captain Ditmore had any discretion in the

23

"administrative process" such that he could correct discrimination. West cannot merely allege that there was a high-ranking firefighter or police officer at the scene and that person should have made a different decision; such a standard would undermine *Liese* and *Silberman* and open the door to vicarious liability under the ADA.

West analogizes Captain Ditmore to the doctors in *Liese* and the schoolteachers in *J.S. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 989 (11th Cir. 2017). But those individuals had on-going, established relationships with the plaintiffs, as opposed to Captain Ditmore, who was responding to an emergency 911 call. More importantly, however, the teachers in *J.S.* were expected to play a role in the administrative process, and the request for an accommodation in *Liese* was made directly to doctors that had authority to grant or deny the request. *Liese*, 701 F.3d at 350; *J.S.*, 877 F.3d at 990. Thus, the "officials" in those cases exercised their discretion in a key decision point in the administrative process, and their actions could result in direct liability against the entity.

## B.    Ditmore did not have actual knowledge of discrimination.

Next, although West alleged that Captain Ditmore possessed actual knowledge that modifications to the restraints were needed to avoid

West's death (Doc. 28 ¶ 99), that is a conclusory allegation without factual support. As mentioned above, to show deliberate indifference, a plaintiff must point to previous instances of discrimination to put a decisionmaker on notice. West does not allege that Ditmore knew from previous incidences that applying prone restraints to suspects with excited delirium was discriminatory and caused injuries. Rather, West merely contends that it is widely known that prone restraints and behind-the-back-handcuffing are dangerous. Doc. 28 ¶ 98. As argued above, West's proposed standard is much lower than the "exacting" one mandated by this Court. *Gebser*, 524 U.S. at 285; *Ingram*, 30 F.4th at 1259. Accordingly, West has not plausibly alleged that Captain Ditmore had actual knowledge of discrimination.

### C. Ditmore was not deliberately indifferent to the alleged misconduct.

Finally, even assuming that Ditmore had actual knowledge of discrimination and that his decision making at the scene of this emergency can be imputed to DeKalb County, Captain Ditmore was nonetheless not deliberately indifferent. West alleged that Captain Ditmore ordered the handcuffs on Jamon to be replaced with soft

restraints once the sedatives took effect. Doc. 28 ¶¶ 50-52. Thus, Captain Ditmore was not deliberately indifferent.

### III. The District Court properly dismissed West's excessive force claim because each of the individual defendants, including Officer Lattimore, is entitled to qualified immunity.

In a § 1983 case in which qualified immunity is raised, once a government official defendant establishes that they were acting within their discretionary authority, a plaintiff must show "(1) that the government official violated a constitutional right and, if so, (2) that the constitutional right was clearly established at the time of the wrongdoing." *Helm v. Rainbow City, Ala.*, 989 F.3d 1265, 1272 (11th Cir. 2021).

Here, it is undisputed that Officer Lattimore was acting within his discretionary authority. Officer Lattimore was performing a legitimate police function when he responded to West's emergency call and handcuffed Jamon. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252 (11th Cir. 2004) (holding that a police officer acts within his discretionary authority when he performs a job-related goal, such as making an arrest).

West contends that Officer Lattimore, along with multiple firefighters, violated Jamon's clearly established right to be free from

excessive force. Specifically, she claims that they violated Jamon's rights by restraining him in a prone position and cuffing his hands behind his back. West also contends that these actions constituted deadly force. Appellant's Brief at 34. Moreover, West argues that it was clearly established that what the officers did was illegal because using deadly force in non-deadly situations obviously violates the Fourth Amendment. West's claim fails on both prongs of qualified immunity.

## A.    West did not plausibly allege an excessive force claim.

"A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard." *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014); *Graham v. Conner*, 490 U.S. 386, 395 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985). This standard "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396.

West alleged that Jamon was suffering a severe "behavioral crisis," in which he was exhibiting "extreme agitation." Doc. 28 ¶¶ 19-20. She called 911 because she could not control Jamon, and when first

27

responders arrived Jamon was "highly agitated, hyperactive, confused, and not in control of his behavior." *Id.* at 24. The first responders thus administered a chemical sedative to Jamon and restrained him in a prone position with his hands cuffed behind his back until the sedative took effect. *Id.* ¶¶ 35, 41, 50. The officers did not shoot, taze, strike, punch, or pepper spray Jamon, and they replaced his handcuffs with soft restraints once Jamon had calmed. *Id.* ¶¶ 50-52. Officer Lattimore and the other individual defendants' actions were not unreasonable.

In *Cottrell v. Caldwell,* a woman called the police because her grandson was experiencing psychological problems. 85 F.3d 1480 (11th Cir. 1996). When the officers arrived, a struggle ensued. The man was eventually placed in handcuffs and leg restraints and put in the police cruiser with his head in the floorboard. The position in which the man was restrained caused him to asphyxiate and die. *Id.* at 1488. This Court acknowledged that the plaintiff had presented evidence that it was "well known by police . . . [that] improper restraint of arrested persons, especially those on medication and/or who have engaged in strenuous activity, could quickly cause death by asphyxiation." *Id.* Nonetheless, the Court reversed the district court and held the officers were entitled to

summary judgment on the excessive force claim against them because the force used was reasonable to effect an arrest of an uncooperative suspect. *Id*. at 1492.

Similarly, in *Garrett v. Athens-Clarke Cnty.*, this Court reversed the denial of summary judgment for an excessive force claim where officers had restrained a suspect in a prone position and caused his death. There, the arrestee was restrained so severely that his body was bowed and there were "fewer than 12 inches" between his wrists and ankles behind his back. 378 F.3d 1274, 1278 (11th Cir. 2004). Moreover, the officers bound the suspect in this manner even after they had pepper sprayed him and gained compliance. *Id*. at 1280-81. Nonetheless, the Court held that binding the suspect in this manner while in a prone restraint was not excessive force when the suspect had evaded and resisted arrest. *Id*.

West relies on *Bradley v. Benton*, 10 F.4th 1232 (11th Cir. 2021) to show that the force used against Jamon was deadly, and therefore excessive in this situation. But *Bradley* is easily distinguishable. In that case, a man died after falling off an eight-foot wall when the defendant officer tased him. *Id*. at 1237. The officer testified that he understood that what he did constituted deadly force, and it was undisputed that the man

29

he tased was not armed, was not suspected to have committed a crime, and was not resisting arrest. *Id.* at 1241-42. The Court thus held that such force was unreasonable. *Id.* at 1242-44.

Here, Jamon was having a behavioral crisis, and his mother called emergency services because she could not control him. When the defendants arrived, it was objectively reasonable for them to restrain Jamon and cuff his hands behind his back because he was not in control of his behavior.

## B. Officer Lattimore's actions did not violate clearly established law.

Even if the Court finds that West plausibly stated an excessive force claim, West still has not overcome qualified immunity by showing that Officer Lattimore violated clearly established law.

For a right to be clearly established, the law must be "sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Helm*, 989 F.3d at 1272. This can be shown in three ways: (1) a materially similar, binding case; (2) an established principle that controls the novel facts of the situation; or (3) that the defendant's conduct was so bad that it obviously violated the law. *Gains v.*

*Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017). The Court has warned that the second and third prongs are exceptionally rare. *Id*.

Here, West relies on the second prong. Specifically, she cites the general principle that an officer's use of deadly force is excessive when the situation does not call for deadly force. Appellant's Brief at 34. West further argues that to overcome qualified immunity she only needs to point to case law that put the defendants on notice that using deadly force when not needed is unconstitutional, not that what the officers did actually constitutes deadly force. West is wrong; even when proceeding under the general principle prong the precedent that the plaintiff points to still must inform an officer that what they are factually doing is unconstitutional. *District of Columbia v. Wesby*, 583 U.S. 48, 62 (2018); *Gains*, 871 F.3d at 1209 (explaining that a general principle must still be clear enough so that a reasonable officer would know what they did violated federal law when they acted); *see also Jones v. City of Dothan Ala.*, 921 F.3d 1456, 1460 (11th Cir. 1997) (explaining that officials are not obligated to be imaginative or draw analogies from cases).

West relies on *Bradley v. Benton* to argue that it was clearly established that restraining Jamon in a prone position with his hands

31

behind his back was unconstitutional. First, *Bradley* cannot be used to establish that the defendants' actions on August 16, 2019 were clearly illegal because Bradley was not decided until 2021. Moreover, and as mentioned above, there was evidence in *Bradley* that the officer-defendant knew that tasing a man on a wall was deadly force; the officer had been trained that tasers caused neuromuscular incapacitation, which causes falling. 10 F.4th at 1241. Importantly, the Court explained that it was the analogous *facts* in *Tennessee v. Garner* that put the defendant officer on notice that his actions were illegal—not the principle that using deadly force in non-deadly situations is illegal. *Id*. at 1243. Again, in both *Bradley* and *Garner*, police tased or shot fleeing men who were unarmed and not suspects of violent crimes.

Here, a reasonable officer in Officer Lattimore's position would not conclude that the holdings in *Tennessee* and *Bradley* make clear that implementing a prone restraint and handcuffing a highly agitated, out of control individual obviously violated the constitution.

This is especially so considering *Cottrell v. Caldwell* and *Garrett v. Athens-Clarke Cnty., Ga*. Again, in *Cottrell*, this Court held that police had not used excessive force by cuffing his hands and legs and placing

him face down in the backseat floorboard of a police cruiser. 85 F.3d at 1488, 1492. What's more, the plaintiff there submitted evidence that it was well known that improperly restraining suspects increased the risk of asphyxiation. *Id.* at 1488. Likewise, in *Garrett*, this Court held that officers did not use excessive force when they fettered a man who, after previously resisting, was compliant with officer. 378 F.3d at 1281. The Court added in *Garrett* that even if the officers had employed excessive force, the officers were protected by qualified immunity because there was no controlling authority on point and because the officers' actions were not "beyond the hazy border between excessive and acceptable force." *Id.*

The Court should affirm the district court's dismissal of West's excessive force claim.

## IV.    The District Court properly dismissed West's failure to intervene claims.

West alleged a failure to intervene claim against each of the individual defendants based on their failure to stop the defendants that allegedly used excessive force. Doc. 28 ¶¶ 140-44. This Court should affirm the District Court's dismissal because none of the first responders involved used excessive force in violation of Jamon's clearly established

rights. And because there was no underlying violation of clearly established law, West's failure to intervene claim necessarily fails. *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019); *Bussey-Morice v. Kennedy*, 657 F. App'x 909, 915 (2016).

## V.    The District Court properly dismissed West's *Monell* claim.

Finally, West argues that the District Court improperly dismissed her *Monell* claim based on DeKalb County's alleged failure to train. Vicarious liability is not allowed under § 1983. Rather, a plaintiff proceeding under *Monell* must plead and prove: (1) that his or her constitutional rights were violated; (2) that the entity had an unconstitutional policy or a custom that constituted deliberate indifference to the plaintiff's constitutional rights; and (3) that the policy or custom caused the constitutional violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

There are two ways to establish that a city was on notice of its need to train: (1) by showing a pattern of constitutional violations or (2) by showing that a constitutional violation is so likely that the need to train is obvious. *Lewis v. Cty. of West Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2019). The second prong was hypothesized in dictum by the

Supreme Court in *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989)). There, the Court stated that in a "narrow range" of cases, a pattern of constitutional violations would not be necessary to establish liability for a *Monell* failure to train claim. The sole example given by the Court was if a city armed its police officers and did not train them on the constitutional limits of deadly force. *Id.*

West argues that the exception in *City of Canton* applies here. In other words, West asserts that it was so likely that a constitutional violation would occur because DeKalb County failed to train its officers on how to restrain individuals with excited delirium that she doesn't need to allege a pattern of previous, similar violations. But establishing a *Monell* claim under the *City of Canton* exception almost never applies. *Gold v. City of Miami*, 151 F.3d 1346, 1352 (11th Cir. 1998) (failure to train on responding to handcuff complaints and failure to train on determining when an individual has violated a disorderly conduct statute insufficient to establish liability); *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1053 (11th Cir. 2004) (failure to train on inmate segregation policies insufficient to establish liability); *Vielma v. Gruler*, 808 F. App'x 872, 883 (2020) (failure to train on active shooter situations insufficient

to establish liability). Further, since *Canton*, the Supreme Court has never actually held that the need for training was so obvious that a *Monell* claim was viable. *Denham v. Corizon Health, Inc.*, 675 F. App'x 935, 942 (2017).

Here, failing to train first responders on this narrow issue—that cuffing an individual's hands behind their back in a prone position while they experience non-diagnosable medical phenomena increases the risk of positional asphyxia—is not at all like issuing guns to cops with no use of force training.

The District Court properly dismissed West's *Monell* claim.

## CONCLUSION

This Court should affirm the District Court's dismissal of West's claims.

Submitted this 24th day of March, 2025.

**HALL   BOOTH   SMITH, P.C.**

/s/ M. Blake Walker
R. DAVID WARE
Georgia Bar No. 737756
RUSSELL A. BRITT
Georgia Bar No. 473664
PEARSON CUNNINGHAM
Georgia Bar No. 391024
M. BLAKE WALKER
Georgia Bar No. 993236

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA  30303
Tel; 404-954-5000
Email:dware@hallboothsmith.com
Email:rbritt@hallboothsmith.com
Email:pcunningham@hallboothsmith.com
Email:bwalker@hallboothsmith.com

*Counsel for DeKalb County, Georgia, Sgt. M. Williams, Off. Timothy Lattimore, Off. C. Jones, and Off. Deion Paxton*

## CERTIFICATE OF COMPLIANCE

In compliance with Federal Rule of Appellate Procedure 27(d)(2) the undersigned counsel hereby certifies the following:

(1) This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,518 words, excluding those parts exempted by Fed. App. P. 32(f).

(2) This brief complies with the typeface requirements of Fed. R. App. P. 32(A)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 with size 14 point, Century Schoolbook style.

*/s/ M. Blake Walker*
M. Blake Walker
Ga. Bar No. 993236

**CERTIFICATE OF SERVICE**

I certify that I filed a copy of the forgoing brief with the Appellate

CM/ECF system on March 24, 2025. All counsel of record are registered

CM/ECF users, and service will be accomplished by the CM/ECF system.

*/s/ M. Blake Walker*
M. Blake Walker